**6-Person Jury**

IN THE CIRCUIT COURT OF CCOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

FILED
3/2/2021 10:05 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021L002435

JUSTIN MONTGOMERY,
    Plaintiff,

Vs.

THE VILLAGE OF PHOENIX, ILLINOIS;
ANTOINE ANDERSON, #101, INDIVIDUALLY
AND ACTING AS DEPUTY CHIEF of the VILLAGE
OF PHOENIX POLICE DEPARTMENT;
and T'RAH DAVIS, #42,
    Defendants.

2021L002435

## COMPLAINT

### FACTS COMMON TO ALL COUNTS

1. Defendant Village of Phoenix is a duly constituted municipal corporation of the State of Illinois, County of Cook.

2. The Village of Phoenix operates a police department with sworn officers subject to the provisions of 50 ILCS 705.

3. On March 5, 2020, Justin Montgomery ("Justin") was a resident of the State of Illinois, County of Cook.

4. That evening, Justin was driving a white Dodge Challenger to his grandmother's home in Phoenix, Illinois.

5. On the same evening, Defendant Village of Phoenix, Illinois employed the following Defendant police officers:

    a. Deputy Chief Antoine Anderson, #101; and

    b. T'Rah Davis, #42.

6. At 9:00 PM, Officer Jarrett Snowden, #17, heard Illinois State Police ISPERN alert NO. 1067 to locate a white Dodge that was alleged to have eluded the South Holland police at

1

EXHIBIT "A"

8:55 at 162nd and I-94 in South Holland, which is a 12-minute drive from a Citgo gas station located at 15221 Halsted Street, Village of Phoenix, Illinois ("the scene").

7. The ISPERN alert was not associated with any violent crime or felony and may have been for something as benign as sliding through a stop sign in the blowing snow and high winds reported that evening.

8. At 9:23, Officer Snowden was reportedly sitting in his Phoenix police unit at 153rd Street and Halsted, just south of a Citgo gas station when Justin drove a white Dodge by him and into the Citgo.

9. Officer Snowden followed Justin into the Citgo, stopping on the Citgo property without activating his police light bar, interacting with Justin, or otherwise indicating to Justin that he was under suspicion or investigation.

10. Officer Snowden then left the Citgo in his Village of Phoenix police unit.

11. Justin went into the Citgo store, pre-paid for his gas, and then went outside to the pumps and to wipe down the Dodge from the blowing snow.

12. At 9:35, Justin had finished pumping the gas and had gotten into the Dodge to leave the Citgo when Officer Snowden returned to the Citgo, and stopped behind Justin, without initiating contact with Justin.

13. About that time, a dark, unmarked Phoenix police SUV driven by Deputy Phoenix Police Chief Antoine Anderson, #101 pulled into the Citgo and stopped in front of Justin.

14. No officer issued commands to Justin to indicate that he was the object of the police presence in the Citgo, which had multiple concurrent patrons.

15. The Citgo is a community place of gathering and interaction for persons of the community who were inside and outside of the Citgo with no apparent alarm when the officers parked in front of and behind the Dodge Justin was occupying.

16. Justin backed up so he had room to exit safely around the SUV that had parked in front of him.

17. Justin was known to the Phoenix police because it is a very small community of less than 2,000 residents and Justin had recently been involved in a vehicle tow occasion with one of the responding officers before the March 5, 2020 incident.

18. As Justin backed up so he could drive around the unmarked Phoenix SUV, the Dodge he was driving inadvertently touched Officer Snowden's police unit without causing damage to either vehicle.

19. As Justin began to drive around the SUV parked in front of him, Phoenix Officers Deputy Chief Antoine Anderson, #101, and T'Rah Davis, #42; jumped out of the dark Phoenix police SUV and without uttering a word of warning began spraying semi-automatic pistol fire through the windows of the Dodge and around the Citgo.

20. The bullets spewed shattering glass over the interior of the Dodge, accompanied with the loud gunfire of the large caliber semi-automatic pistols being fired by Officers Anderson and Davis.

21. Officer Deputy Chief Anderson, the driver of the unmarked SUV, was wearing blue jeans and a hoodie when he jumped out of the SUV and began firing.

22. To escape certain death after Village of Phoenix police offices Deputy Chief Anderson and Davis opened fire with their semi-automatic weapons, Justin accelerated around the SUV and left the Citgo as quickly as possible.

3

23. As Justin left the Citgo and was beyond the unmarked Phoenix police SUV, Village of Phoenix police officers Deputy Chief Anderson and Davis continued to fire their semi-automatic weapons at him, striking him in the left arm, abdomen, and hip with high-powered ammunition.

24. Officers Deputy Chief Anderson and Officer Davis also shot out the tires on the driver's side of the Dodge.

25. Justin managed to drive the crippled Dodge to his Grandmother's home in Phoenix, which is about three blocks from the Citgo.

26. When Justin's Grandmother realized Justin had been shot, she called 911 for assistance.

27. Village of Phoenix police Officer's Deputy Chief Anderson, Davis, and Snowden heard the 911 dispatch call and drove to Justin's Grandmother's home on 153rd, 2 blocks from the Phoenix Police Department, and found Justin inside the home with three gunshot wounds inflicted by Village of Phoenix Deputy police Chief Anderson and Officer Davis.

28. The officers apologized to Justin and the family for shooting him.

29. Justin was transported to a hospital by ambulance and treated for the gunshot wounds inflicted by officers Davis and Deputy Chief Anderson.

30. Justin was discharged from the hospital to home without criminal charges.

31. No police officer or other citizens were injured by Justin's exit from the Citgo or during the shooting.

32. Before Village of Phoenix Officer Deputy Chief Antoine Anderson, #101 opened fire that night. he had a long history of allegations related to excessive violence associated with arrests, death of detainees, and corruption.

4

33. Despite Officer Deputy Chief Antoine Anderson, #101's obvious disqualifications, the Phoenix Police Department had hired Officer Anderson, designated him as Deputy Chief of the Phoenix Police, and those acts enabled his shooting Justin at the Citgo.

34. Justin was arrested on March 11, 2020.

35. The Cook County prosecutor presented the State's case against Justin to a Grand Jury based on false and misleading testimony and obtained an indictment against Justin as a result of his behavior when he was escaping certain death in the unprovoked shooting initiated by Village of Phoenix police Officer Deputy Chief Antoine Anderson, #101.

36. The charges against Justin are still pending.

### COUNT I-NEGLIGENCE OF VILLAGE OF PHOENIX OFFICER ANTOINE ANDERSON, #101

37. Justin restates paragraphs 1-36 and further alleges Village of Phoenix police Officer Deputy Chief Antoine Anderson, #101, owed a duty to Justin to not initiate a situation personally and on behalf of the Village of Phoenix that put Justin under Officer Anderson's control and into a position of peril.

38. When Officer Deputy Chief Antoine Anderson, #101 parked his unmarked Village of Phoenix police SUV in front of the Dodge Justin was going to drive, he intentionally created a situation of control over Justin's movement and control of the scene.

39. Officer Deputy Chief Antoine Anderson, #101, was uniquely aware that his decision to fire his semi-automatic high-caliber weapon into the Dodge occupied by Justin would expose Justin to the risk of death or serious bodily injury and was an effort to exert extreme control over Justin's movement.

40. When Officer Deputy Chief Antoine Anderson, #101, jumped out of the unmarked SUV and begin firing his semi-automatic pistol into the Dodge Justin was driving, he acted

5

deliberately and willfully to put Justin under his direct and immediate control for the purpose of causing grave or fatal bodily injury to Justin.

41. Officer Deputy Chief Antoine Anderson, #101, acts breached the duty he owed to Justin to not place Justin into a situation where he would be exposed to the risk of grievous or fatal bodily injury.

42. The bullets that Officer Antoine Anderson, #101, fired into Justin's body caused grievous bodily injury while Officer Deputy Chief Antoine Anderson, #101 was exerting control over Justin's body by firing bullets into Justin.

Wherefore Justin demands a jury trial to determine the liability of Officer Antoine Anderson, #101, to Justin for damages, attorney fees, and costs.

COUNT II- THE WILLFUL AND WANTON CONDUCT OF VILLAGE OF PHOENIX OFFICER ANTOINE ANDERSON, #101

43. Justin restates paragraphs 1-42 and further alleges that Village of Phoenix police Officer Antoine Anderson, #101, acted willfully and wantonly with the intent to cause serious or fatal injuries to Justin.

44. Officer Deputy Chief Antoine Anderson, #101 was aware that he was intentionally firing bullets from a semi-automatic large-caliber weapon into the driver's portion of the Dodge Justin occupied and around the Citgo.

45. Officer Deputy Chief Antoine Anderson, #101 was aware that a slug from a large caliber weapon such as the one he was intentionally firing into the driver's position of the Dodge Justin was driving was likely to cause serious bodily harm or death if he hit his target.

46. Officer Deputy Chief Antoine Anderson, #101 was intentionally trying to kill Justin or cause grievous bodily injury.

6

47. Officer Deputy Chief Antoine Anderson, #101's conduct also indicates that he had a complete and utter indifference and conscious disregard for the safety of Justin and others present at the Citgo when he decided to open fire.

48. The bullets that Officer Antoine Anderson, #101, fired into Justin's body caused grievous bodily injury while Officer Antoine Anderson, #101 was exerting control over Justin's body by firing bullets into Justin.

Wherefore Justin demands a jury trial to determine the liability of Officer Antoine Anderson, #101, to Justin for damages, attorney fees, and costs.

### COUNT III- THE WILLFUL AND WANTON CONDUCT OF VILLAGE OF PHOENIX OFFICER T'RAH DAVIS, #42

49. Justin restates paragraphs 1-48 and further alleges that on March 5, 2020, Village of Phoenix police Officer T'Rah Davis, #42 acted willfully and wantonly with the intent to cause serious or fatal injuries to Justin.

50. Village of Phoenix police Officer T'Rah Davis, #42 was aware that he was intentionally firing bullets from a semi-automatic large-caliber weapon into the driver's portion of the Dodge Justin occupied and around the Citgo premises.

51. Village of Phoenix police Officer T'Rah Davis, #42 was aware that a slug from a large caliber weapon such as the one he was intentionally firing into the driver's position of the Dodge Justin was driving was likely to cause serious bodily harm or death if he hit his target.

52. Village of Phoenix police Officer T'Rah Davis, #42 was intentionally trying to kill Justin or cause grievous bodily injury.

7

53. Village of Phoenix police Officer T'Rah Davis, #42's conduct also indicates that he had a complete and utter indifference and conscious disregard for the safety of Justin and others present at the Citgo when he decided to open fire.

54. The bullets that Village of Phoenix police Officer T'Rah Davis, #42 fired into Justin's body caused grievous bodily injury while Village of Phoenix police Officer T'Rah Davis, #42 was exerting control over Justin's body by firing bullets into Justin.

Wherefore Justin demands a jury trial to determine the liability of Village of Phoenix police Officer T'Rah Davis, #42 to Justin for damages, attorney fees, and costs.

### COUNT IV-CONCERTED ACTION OF VILLAGE OF PHOENIX POLICE OFFICERS DEPUTY CHIEF ANTOINE ANDERSON, #101 AND T'RAH DAVIS, #42

55. Justin restates paragraphs 1-54 and further alleges that on March 5, 2020, Village of Phoenix police Officers Deputy Chief Antoine Anderson, #101 and T'Rah Davis, #42 acted willfully and wantonly in concert with the intent to cause serious or fatal injuries to Justin when they simultaneously and concertedly opened fire on Justin without warning or justification.

Wherefore Justin demands a jury trial to determine the liability of Village of Phoenix police Officers Deputy Chief Antoine Anderson, #101 and T'Rah Davis, #42 to Justin for damages, attorney fees, and costs.

### COUNT V-NEGLIGENCE OF VILLAGE OF PHOENIX FOR THE ACTS OF VILLAGE OF PHOENIX POLICE OFFICERS DEPUTY CHIEF ANTOINE ANDERSON, #101 AND T'RAH DAVIS, #42

56. Justin restates paragraphs 1-55 and further alleges that on March 5, 2020, Village of Phoenix police Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis, #42 acted willfully, wantonly, and with reckless disregard for the safety of Justin and

8

others present on the scene with the intent to cause serious or fatal injuries to Justin as duly authorized police representatives of the Village of Phoenix.

57. The Village of Phoenix owed Justin a duty not to initiate a situation where Village of Phoenix police Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis, #42, could put Justin under their control and into a position of peril.

58. When Officer Deputy Chief Antoine Anderson, #101 parked the unmarked Village of Phoenix police SUV in front of the Dodge Justin was going to drive, he intentionally created a situation of control over Justin's movement and control of the scene on behalf of the Village of Phoenix.

59. Officer Deputy Chief Antoine Anderson, #101, and officer T'Rah Davis, #42 were uniquely aware that their decision to fire their semi-automatic high-caliber weapons into the Dodge occupied by Justin would expose Justin to the risk of death or serious bodily injury and was an effort to exert extreme control over Justin's movement on behalf of the Village of Phoenix..

60. When Officer Deputy Chief Antoine Anderson, #101, and Officer T'Rah Davis, #42 jumped out of the unmarked SUV and began firing their semi-automatic pistols into the Dodge Justin was driving, they acted deliberately and willfully to put Justin under their direct and immediate control for the purpose of causing grave bodily injury to Justin on behalf of the Village of Phoenix.

61. Officer Deputy Chief Antoine Anderson, #101, and Officer T'Rah Davis, #42's acts breached the duty they owed to Justin to not place Justin into a situation where he would be exposed to the risk of grievous bodily injury on behalf of the Village of Phoenix.

9

62. The bullets that Officer Antoine Anderson, #101, and Officer T'Rah Davis, #42, fired into Justin's body caused grievous bodily injury while Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis, #42 were exerting control over Justin's body by firing high-energy projectiles into Justin on behalf of the Village of Phoenix.

Wherefore Justin demands a jury trial to determine the liability of the Village of Phoenix to Justin for damages, attorney fees, and costs for the actions of Officer Antoine Anderson, #101 and Officer T'Rah Davis, #42.

## COUNT VI-NEGLIGENCE OF VILLAGE OF PHOENIX FOR HIRING POLICE OFFICER DEPUTY CHIEF ANTOINE ANDERSON

63. Justin restates paragraphs 1-62 and further alleges that before March 5, 2020, the Village of Phoenix negligently hired police Officer Deputy Chief Antoine Anderson, #101 who acted willfully, wantonly, and with reckless disregard for the safety of Justin and others present on the scene with the intent to cause serious or fatal injuries to Justin as a duly authorized representative of the Village of Phoenix in violation of 50 ILCS 705/6.2.

64. Illinois statute 50 ILCS 705/6.2 establishes a database that documents an individual police officer's reportable conduct as a result of any final determination of willful violation of department or agency policy, official misconduct, or violation of law when:

    (1) the officer is discharged or dismissed as a result of the violation; or

    (2) the officer resigns during the course of an investigation and after the officer has been served notice that he or she is under investigation that is based on the commission of a Class 2 or greater felony.

65. Before the Village of Phoenix hired Officer Deputy Chief Antoine Anderson, #101, he was known to have a history of weapons violence that had caused the death of a person.

66. Before the Village of Phoenix hired Officer Deputy Chief Antoine Anderson, #101, he was known to have a history of alleged corruption related to tipping off drug dealers of a police raid in Country Club Hills, Illinois.

67. The Village of Phoenix failed to vet police other officers as illustrated by its hiring of Adrian Santos, III, who failed to reveal that he had killed a shoplifting suspect he had detained in 2017.

68. The actions of police Officer Deputy Chief Antoine Anderson, #101 in trapping and shooting Justin without warning or justification confirms that Anderson was not fit to be a police office.

> Wherefore Justin demands a jury trial to determine the liability of the Village of Phoenix to Justin for damages, attorney fees, and costs for the negligent hiring and retention of Officer Antoine Anderson.

### COUNT VII- VIOLATION OF THE 4TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA BY THE VILLAGE OF PHOENIX PURSUANT TO 42 U.S.C. §1983

69. Justin restates paragraphs 1-68 and further alleges that The Village of Phoenix engaged in a pattern and practice of policing that violates the Fourth Amendment to the Constitution of the United States by knowingly employing, enabling, and approving police practices that embodied excessive force that shocks the conscience in violation of the 4th Amendment of the United States Constitution and 42 U.S.C. §1983 as evidenced by the following:

70. The Village of Phoenix consistently employed police officers with a history of using excessive force.

71. The Village of Phoenix consistently failed to adequately train its police officers in the constitutionally acceptable use of force to effect an arrest as illustrated in the flagrant use of force by Village of Phoenix Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis, #42 during their wild shooting of Justin to effect a traffic stop at a congested gas station, which was objectively unreasonable.

72. On March 5, 2020, Village of Phoenix Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis, #42 acted under color of Illinois State law when they intended to use excessive force and violence in the form of semi-automatic large-caliber pistol fire to arrest Justin during a traffic stop by shooting him multiple times as he fled their shooting at him without warning or objectively reasonable justification.

73. The actions of Village of Phoenix Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis, #42 deprived Justin of his right to be free of unreasonable police violence pursuant to the 4th Amendment to the Constitution of the United States.

74. Both Phoenix Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis, #42, should have known, if adequately trained, that attempting to kill a person with semi-automatic large-caliber pistol fire without warning when the person was driving away from a traffic stop violated Justin's constitutional right to be free of excessive force.

Wherefore Justin demands a jury trial to determine the liability of the Village of Phoenix to Justin for the actions of Officer Antoine Anderson, #101 and Officer T'Rah Davis, #42 who violated Justin's 4th Amendment rights, personal injury damages, attorney fees pursuant to 42 USC §1988, and costs for.

COUNT VIII- VIOLATION OF THE 4TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA BY VILLAGE OF PHOENIX POLICE OFFICERS DEPUTY CHIEF ANTOINE ANDERSON, #101 AND T'RAH DAVIS, #42

75. Justin restates paragraphs 1-74 and further alleges that Village of Phoenix Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis knowingly employed excessive violence that shocks the conscience in violation of the 4th Amendment of the United States Constitution and 42 U.S.C. §1983 when they directed semi-automatic high-caliber pistol fire toward Justin with the intent to kill or seriously injure Justin while making a traffic stop at a gas station.

76. Phoenix Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis violated Justin's right to be free of excessive police violence guaranteed by the Fourth Amendment to the United States Constitution when they attempted to kill or seriously maim Justin without warning by shooting semi-automatic high-caliber pistols at Justin when they had no objective reason to believe Justin's leaving the gas station posed a significant threat of death or serious physical injury to anyone.

77. The use of gun violence by Phoenix Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis directed toward Justin was not objectively reasonable because Justin was known to the officers present during the stop to be a non-violent and respectable member of the community with no prior criminal history.

78. The use of gun violence by Phoenix Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis, #42, directed toward Justin was an objectively unreasonable behavior to issue a traffic citation to Justin at a gas station.

79. The use of gun violence by Village of Phoenix Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis, #42, was objectively unreasonable because immediately before Officer Jarret Snowden, #17 summoned Phoenix Officer Deputy Chief Antoine Anderson, #101 and Officer T'Rah Davis, #42, to the gas station, Officer Snowden had

visibly encountered Justin at the gas station and Justin had exhibited normal gas-buying behavior that can only objectively be considered to be law-abiding and peaceful to normal people.

Wherefore Justin demands a jury trial to determine the liability of Village of Phoenix Officers Antoine Anderson, #101 and Officer T'Rah Davis, #42 to Justin for violation of Justin's 4th Amendment rights, personal injury damages, attorney fees pursuant to 42 USC §1988, and costs.

Respectfully submitted,

/s/ Theodore L. Stacy
Theodore L. Stacy, 33993
Attorney for Justin Montgomery
Of Counsel, Walter J. Alvarez, PC
1524 W 96th Ave.
Crown point, IN 46307
219.764.7054
attorneyted@mac.com