UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUSTIN MONTGOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 21 C 6040 |
| | ) | |
| THE VILLAGE OF PHOENIX, ILLINOIS; | ) | |
| ANTOINE ANDERSON, #101, Individually | ) | |
| and Acting as Deputy Chief of the Village of | ) | |
| Phoenix Police Department; and TRAH | ) | |
| DAVIS, #42, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter is before the Court on Defendant Village of Phoenix's ("Village") Motion to Dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), and Defendants Antoine Anderson and T'Rah Davis' Motion to Dismiss Plaintiff's Complaint under Rules 12(b)(5) and 12(b)(6). For the following reasons, the Court grants both Motions.

## BACKGROUND

For the purposes of these Motions, the Court accepts as true the following facts from the Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Montgomery's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

On the evening of March 5, 2020, while on duty in the Village of Phoenix, Illinois, Officer Jarret Snowden of the Phoenix Police Department ("Phoenix PD") heard an Illinois State Police alert to locate a white Dodge that was alleged to have eluded police not far from the gas station where Snowden was parked. Shortly thereafter, Montgomery, driving a White Dodge Challenger, drove by Snowden and pulled into the gas station. Snowden followed Montgomery's vehicle into the gas station and parked his patrol car behind Montgomery's vehicle. At about that same time, an unmarked Phoenix PD SUV, driven by Defendant Anderson, pulled into the gas station and parked in front of Montgomery's vehicle. No officer issued commands to Montgomery or indicated in any way Montgomery was the reason for the police presence at the gas station.

As Montgomery backed up so he could drive around the SUV, his vehicle inadvertently hit Snowden's patrol car. Neither vehicle sustained any damage. As Montgomery began to drive around the SUV, Defendant Officers Anderson and Davis jumped out of the car and, without any warning, began shooting at the windows of Montgomery's vehicle. Montgomery, fearing for his life, accelerated around the SUV and on to the street. Anderson and Davis continued shooting at Montgomery, striking him in the arm, abdomen, and hip. They also shot out the tires on Montgomery's vehicle. Montgomery drove to his grandmother's house where he was later taken to a hospital by ambulance.

On March 2, 2021, Montgomery filed an eight-count Complaint against Anderson, Davis, and the Village in the Law Division of the Circuit Court of Cook County, Illinois. Against Anderson, Montgomery brings state law claims for negligence (Count I) and willful and wanton conduct (Count II). He also brings a state law claim for willful and wanton conduct against Davis (Count III). Count IV is a state law claim entitled "Concerted Action of Village of Phoenix Police Officers [Anderson and Davis]." Against the Village, Montgomery brings state law claims for negligence and willful and wanton misconduct (Count V) and negligent hiring (Count VI). In Count VII, Montgomery brings what purports to be a *Monell* claim against the Village. Finally, in Count VIII, Montgomery brings a claim under 42 U.S.C. § 1983 against the Defendant Officers for violations of his Fourth Amendment rights.

Montgomery says he mailed certified letters containing the Complaint to each Defendant on March 6, 2021. Montgomery, however, did not formally serve the Village with Summons and Complaint until October 29, 2021, and Defendants Anderson and Davis until October 28, 2021, and November 4, 2021, respectively. Defendants timely removed Montgomery's case to this Court on November 12, 2021.

The Defendant Officers now move to dismiss Montgomery's Complaint in its entirety under Rule 12(b)(5) for insufficient service of process or, alternatively, to dismiss Count I against Defendant Anderson under Rule 12(b)(6) for failure to state a claim. The Village also moves to dismiss Montgomery's Complaint under Rule

3

12(b)(5) or, alternatively, to dismiss Counts V, VI[1], and VII against it under Rule 12(b)(6).

## LEGAL STANDARD

Under Rule 12(b)(5), a defendant may move to dismiss a complaint based on insufficient process. *See Cardenas v. City of Chi.*, 646 F.3d 1001, 1005 (7th Cir. 2011). Here, because Defendants removed this lawsuit from state court, Illinois Supreme Court Rule 103(b)—instead of Rule 4(m)—governs whether Montgomery's attempt to serve Defendants was legally sufficient. *See* Fed. R. Civ. P. 81(c); *Cardenas*, 646 F.3d at 1005. In other words, "federal courts may apply state procedural rules to pre-removal conduct," including "the timeliness of service of process." *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 (7th Cir. 2001). Rule 103(b) "calls for plaintiffs to 'exercise reasonable diligence' in serving process, as measured by 'the totality of the circumstances.'" *Kimbrell v. Brown*, 651 F.3d 752, 754 (7th Cir. 2011). The plaintiff has the burden of demonstrating reasonable diligence in the service of process. *See Segal v. Sacco*, 136 Ill. 2d 282, 285 (1990); *see also Hunt ex rel. Chiovari v. Dart*, 612 F. Supp. 2d 969, 979 (N.D. Ill. 2009); *Cooperwood v. Farmer*, 315 F.R.D. 493, 496 (N.D. Ill. 2016).

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th

---

[1] Montgomery withdraws his claim for negligent hiring in Count VI but keeps the factual allegations contained therein. Dkt. # 15, at 9.

4

Cir. 2012). The Court accepts as true well pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## DISCUSSION

With the above standards in mind, we address each Motion in turn.

I. **Motions to Dismiss under Rule 12(b)(5)**

As previously stated, because Defendants removed this lawsuit from Illinois state court, Illinois Supreme Court Rule 103(b) ("Rule 103(b)") governs whether

Montgomery's attempt to serve Defendants was legally sufficient. *Cooperwood*, 315 F.R.D. at 497. Rule 103(b) states in relevant part:

> If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice as to that defendant only and shall not bar any claim against any other party based on vicarious liability for that dismissed defendant's conduct. The dismissal may be made on the application of any party or on the court's own motion. In considering the exercise of reasonable diligence, the court shall review the totality of the circumstances, including both lack of reasonable diligence in any previous case voluntarily dismissed or dismissed for want of prosecution, and the exercise of reasonable diligence in obtaining service in any case refiled under section 13-217 of the Code of Civil Procedure.

Ill. S. Ct. R. 103(b).

In moving for dismissal under Rule 103(b), the defendant must initially make a *prima facie* showing that the plaintiff failed to exercise reasonable diligence in effectuating service after filing the complaint. *Emrikson v. Morfin*, 2012 IL App (1st) 111687, ¶ 17. Once the defendant establishes that the time between the filing of the complaint and the date of service suggests a lack of diligence, the burden then shifts to the plaintiff to provide a satisfactory explanation for the delay in service. *Id.* This is determined under an objective standard. *Kole v. Brubaker*, 325 Ill. App. 3d 944, 950 (1st Dist. 2001). In the absence of a satisfactory explanation, the trial court is justified in granting a Rule 103(b) dismissal. *Id.* Ultimately, "[d]ismissal under Rule 103(b) is within the sound discretion of the trial court." *Segal*, 136 Ill. 2d at 286.

At the outset, we note Montgomery's counsel did not submit any affidavit explaining why it took nearly eight months to serve Defendants in this case; rather, he merely argues facts in his Response and attaches various court documents and other materials. A plaintiff's diligence "must be established factually, by affidavits in conformance with the rules of evidence." *Mayoral v. Williams*, 219 Ill. App. 3d 365, 370 (4th Dist. 1991); *see also Tischer v. Jordan*, 269 Ill. App. 3d 301, 307 (1st Dist. 1995). Counsel's failure to provide the evidentiary support required to show his delay was reasonable and justified under the circumstances justifies dismissal under Rule 103(b). *See Emrikson*, 2012 IL App (1st) 111687, ¶ 17. Nevertheless, for the sake of completeness, we will proceed with our analysis.

A trial court's determination of a plaintiff's lack of diligence is "a fact-intensive inquiry suited to balancing, not bright lines." *Hinkle v. Henderson*, 135 F.3d 521, 524 (7th Cir. 1998). Courts consider a number of factors when determining whether to grant a Rule 103(b) motion, including but not limited to: (1) the length of time used to obtain service of process; (2) the activities of the plaintiff; (3) the plaintiff's knowledge of the defendant's location; (4) the ease with which the defendant's whereabouts could have been ascertained; (5) the defendant's actual knowledge of the pendency of the action as a result of ineffective service; (6) special circumstances which would affect the plaintiff's efforts; and (6) actual service on the defendant. *Case*, 227 Ill. 2d at 212–13; *see also Segal*, 136 Ill. 2d at 287. The Court will consider each of these factors in turn.

First, the length of time used to obtain service of process. Montgomery filed his Complaint on March 2, 2021, three days before the expiration of the statute of limitations of Montgomery's state law claims. The Village was formally served on October 29, 2021, and Defendants Anderson and Davis were formally served on October 28, 2021, and November 4, 2021, respectively. That Montgomery took nearly eight months after filing suit to serve Defendants evidences a lack of reasonable diligence.[2] *See Lewis v. Dillon*, 352 Ill. App. 3d 512, 516 (1st Dist. 2004) (affirming dismissal where the plaintiff failed to "effectuate service within a five-month period"); *Smith v. Menold Constr., Inc.*, 348 Ill. App. 3d 1051, 1056 (4th Dist. 2004) (same, and collecting cases).

Next, we consider Montgomery's activities. Summonses were issued for all Defendants on March 3, 2021. Montgomery attempted to serve Defendants via Certified Mail[3] on March 6, 2021. The Certified Mail was delivered to the Village and Davis on March 9, 2021, but Anderson's mail was returned as undeliverable on March 24, 2021.

Sometime in April 2021, Montgomery's attorney was contacted by counsel for the Village regarding proof of service on the Village, yet Montgomery waited until July 1, 2021, to place an alias summons to the Village with the Sheriff. This summons was

---

[2] Thus, the burden is on Montgomery to provide a satisfactory explanation for the delay. *Kramer v. Ruiz*, 2021 IL App (5th) 200026, ¶ 21.

[3] Service by mail is improper under 735 ILCS 5/2-202.

returned indicating no service on August 12, 2021. No further efforts were made to serve the Village until late October.

The next action taken toward serving the Defendant Officers was not until July 9, 2021, when Montgomery's counsel reached out to a potential special process server. A special process server was retained on August 19, 2021, yet counsel did not move to have the special process server appointed until October 13, 2021. Alias summonses were issued on October 22, 2021, and all Defendants were formally served within the next two weeks.

As for the third and fourth *Segal* factors—Montgomery's knowledge of Defendants' locations and the ease with which Defendants' whereabouts could have been ascertained—these factors weigh heavily against Montgomery with respect to the Village. Montgomery presumably knew the proper address for the Village because his Certified Mail was received in early March. If he was unsure about the correct address, he could have asked for it when he spoke with Village counsel in April.

With respect to the Defendant Officers, it is understandable that Montgomery may have encountered some difficulty in obtaining their addresses, particularly because the Defendant Officers no longer work for the Village. However, the fact that the Defendant Officers were served within two weeks of the issuance of the alias summonses suggests Montgomery had the ability to locate the Defendants with relative ease.

The fifth *Segal* factor is Defendants' actual knowledge of the pendency of the action as a result of ineffective service. This factor weighs in Montgomery's favor as to the Village, but against him with respect to the Defendant Officers. Montgomery suggests his criminal prosecution means the Defendant Officers had notice of his civil lawsuit. We fail to see the connection. In any event, actual notice or knowledge to the defendant of the plaintiff's action, even together with a lack of prejudice to the defendant, will not necessarily preclude dismissal under Rule 103(b). *Kole*, 325 Ill. App. 3d at 952.

Next, we consider whether there were any "special circumstances" present which impeded Montgomery's efforts in obtaining service. Montgomery's counsel generally cites the pandemic and resulting changes to the court system as a special circumstance. He also points out jury trials were suspended in the Circuit Court until September 2021, but it is unclear how this is relevant to Montgomery's efforts to serve Defendants. Counsel also claims the Clerk's Office website was "not functioning normally." In support of this claim, counsel attaches to his Response an email he sent to the Clerk's Office on September 2, 2021, in which he states the website is down and requests the assigned judge's information and case information. Counsel does not explain why he waited until September 2nd to seek out this information, and, regardless of the functionality of the website, the Clerk's Office responded to counsel's request for information the very next day.

Counsel also points to the "dearth of information on how to locate a particular judge's email and zoom information." We are not persuaded. It took counsel one day to get the case and judge information from the Clerk's Office. While counsel blames the Clerk's Office website, he says nothing of any attempt to check the Circuit Court website, which provides, at a minimum, contact information for all Circuit Court judges and, in many instances, also provides motion schedules and standing orders.

We conclude Montgomery has failed to meet his burden of demonstrating reasonable diligence in effectuating service. Because Defendants were not served within the statute of limitations for Montgomery's state law claims (Counts I through VI), those claims are dismissed with prejudice. *See Kramer*, 2021 IL App (5th) 200026, ¶ 20 ("Rule 103(b) provides that, if the plaintiff fails to exercise reasonable diligence to obtain service on a defendant after the statute of limitations has expired, the circuit court may dismiss the matter and that such dismissal shall be with prejudice."). We recognize this is a harsh result; however, "although controversies should ordinarily be resolved on their merits after both sides have had their day in court, a plaintiff may not complain where the dismissal resulted from her own lack of diligence in effectuating service." *Kole*, 325 Ill. App. 3d at 953. Because Defendants were served within the statute of limitations with respect to the federal claims, those claims are dismissed without prejudice.

## CONCLUSION

For the reasons mentioned above, the Court grants Defendants' Motions to Dismiss [10, 12]. Counts I through VI of Plaintiff's Complaint are dismissed with prejudice and Counts VII and VIII are dismissed without prejudice. Plaintiff is granted leave to file an amended complaint within fourteen (14) days.

It is so ordered.

Dated: March 23, 2022

_____
Charles P. Kocoras
United States District Judge