UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUSTIN MONTGOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 21 C 6040 |
| | ) | |
| THE VILLAGE OF PHOENIX, ILLINOIS; | ) | Judge Charles P. Kocoras |
| ANTOINE ANDERSON, #101, Individually | ) | |
| and Acting as Deputy Chief of the Village of | ) | |
| Phoenix Police Department; and TRAH | ) | |
| DAVIS, #42, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on Defendant Village of Phoenix's ("Village") Motion to Dismiss Count I of Plaintiff Justin Montgomery's First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the Motion.

## STATEMENT

For the purposes of this Motion, the Court accepts as true the following facts from the FAC. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Montgomery's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

On the evening of March 5, 2020, while on duty in the Village of Phoenix, Illinois, Officer Jarret Snowden of the Phoenix Police Department ("Phoenix PD")

learned of a South Holland police broadcast that a white Dodge had eluded a traffic stop. The alert was not associated with a violent crime or other felony, and the Phoenix PD had no objective evidence of probable cause showing Montgomery was the driver of the Dodge that was the subject of the alert. Snowden was parked near a gas station when he saw Montgomery enter the gas station in a white Dodge.

Snowden followed Montgomery's vehicle into the gas station and briefly parked his patrol car behind Montgomery's vehicle before leaving the station. Montgomery went into the station to pay for his gas and returned to the pump. Approximately ten minutes later, after Montgomery finished pumping his gas and was back in his car, Snowden returned to the gas station and again parked his patrol car behind Montgomery's vehicle. At about that same time, an unmarked Phoenix PD SUV pulled into the gas station and parked in front of Montgomery's vehicle. No officer issued commands to Montgomery or indicated in any way Montgomery was the reason for the police presence at the gas station.

As Montgomery backed up so he could safely drive around the SUV, his vehicle inadvertently hit Snowden's patrol car. Neither vehicle sustained any damage, and no officer said anything to Montgomery or signaled for him to stop driving as a result of the minor collision. As Montgomery began to drive around the SUV, Defendant Officers Anderson and Davis jumped out of the SUV and, without any warning, began shooting at the windows of Montgomery's vehicle. Montgomery, fearing for his life, accelerated around the SUV and on to the street. Anderson and Davis continued

shooting at Montgomery, striking him in the arm, abdomen, and hip. They also shot out the tires on Montgomery's vehicle. Montgomery drove to his grandmother's house where he was later taken to a hospital by ambulance. Montgomery was arrested six days later and charged with attempted murder, battering Defendants Davis, Anderson, and Snowden, armed violence, and fleeing. The criminal complaint is still pending.

According to the FAC, the Phoenix PD hired Anderson and designated him as Deputy Chief despite a long history of allegations and complaints related to excessive violence associated with arrests, death of detainees, and tipping off a drug dealer about an impending police raid. Davis was hired by the Phoenix PD after he was fired from a different police department after an uncontested hearing in 2017 for not carrying his police ID, the unauthorized carrying of a rifle, failure to wear his uniform, and insubordination.

Montgomery alleges the Village's hiring of the Defendant Officers, in addition to another officer, Santos, who purportedly killed an alleged shoplifter in 2017, shows a pattern of practice of either (1) "failing to perform even minimal background checks that would unearth personality defects in officers that endanger the public's Fourth Amendment constitutional rights," or, alternatively (2) "shows the Village is endorsing those personality traits as examples of its view of how its police officers should view the Fourth Amendment rights of citizens." Dkt. # 19, ¶ 58. Montgomery says the Village's "history of using inadequately trained and incompetent police officers who fail to respect the constitutionally acceptable use of force to affect an investigation or

arrest is demonstrated by its hiring of Anderson, Davis, and Santos and designating Anderson as its Deputy Police Chief." *Id.* ¶ 59.

Based on these events, Montgomery filed his two-count FAC, bringing a *Monell* claim against the Village and a Fourth Amendment excessive force and unreasonable seizure claim against the Defendant Officers under 42 U.S.C. § 1983. The Village moves to dismiss the *Monell* claim in Count I for failure to state a claim.

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S.

4

662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

To establish the Village's liability for a Section 1983 claim under the *Monell* doctrine, Montgomery must show: (1) a violation of his constitutional rights; (2) an injury; and (3) that the injury and violation of rights was directly caused by the Village's own action or inaction. *Bd. of Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). Montgomery must establish that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, [Montgomery] must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id*. Montgomery can establish such a causal link in one of three ways, by showing:

> (1) the Village had an express policy that, when enforced, causes a constitutional deprivation; (2) the Village had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) Montgomery's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000).

Montgomery's *Monell* claim, while somewhat convoluted, seems to be premised upon the allegation that the Village's policy or practice of hiring officers with allegedly checkered pasts demonstrates deliberate indifference to Fourth Amendment rights, and

5

the hiring of the Defendant Officers directly caused the alleged violation of Montgomery's Fourth Amendment Rights. Montgomery does not point to an express Village policy, nor does the FAC say anything of an individual with final policymaking authority. There are no allegations of who within the Village PD made the decision to hire the Defendant Officers. Thus, the Court must presume Montgomery is proceeding under the second theory of *Monell* liability: a widespread custom or practice.

In establishing the existence of such a policy or practice, it is insufficient to "splatter-paint a picture of scattered violations" through "collateral accusations of marginally related incidents." *Carter v. Morris*, 164 F.3d 215, 218–19 (4th Cir. 1999). A court should carefully consider *Monell* allegations to ensure a plaintiff is not "provid[ing] merely boilerplate *Monell* allegations in order to proceed to discovery in the hope of turning up evidence to support his accusation." *Kowalski v. Cnty. of DuPage*, 2013 WL 4027049, at *2 (N.D. Ill. 2013) (Kocoras, J.). While Montgomery identified three Phoenix PD officers who were hired despite having past records of varying levels of misconduct with other police departments[1], he has not directly connected these hiring practices with the alleged violation of Montgomery's Fourth Amendment rights. Remember, Montgomery must plead facts showing the requisite causation, meaning the alleged widespread practice of hiring officers with histories of

---

[1] It is unclear from the FAC whether Santos was already a Phoenix PD officer when he killed an alleged shoplifter in 2017, or if this incident took place prior to his employment with the Phoenix PD. If Santos was already a Phoenix PD officer, then Montgomery's allegations pertaining to Santos lend no support to his claim of a supposed widespread practice of hiring officers with past histories of misconduct.

misconduct was the "moving force" behind his own constitutional injury. *See Brown*, 520 U.S. at 407. Here, Montgomery has failed to make that connection. Count I is dismissed, without prejudice.

In his Response to the Motion to Dismiss, Montgomery seems to suggest he is also trying to establish *Monell* liability based on a decision of a final policymaker that caused his constitutional injury. Should Montgomery choose to amend his *Monell* claim, he should take care to make it clear which theory of *Monell* liability he is pursuing so the Village is on proper notice of the alleged wrongdoing.

Montgomery should also keep in mind that, with respect to an official policymaker, "the cases limit liability under Section 1983 to situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final in the special sense that there is no higher authority." *Gernetzke v. Kenosha Unified Sch. Dist. No 1*, 274 F.3d 464, 469 (7th Cir. 2001). The "mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority" necessary to state a claim under *Monell*. *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 739 (7th Cir. 1999)). Instead, there must be a delegation of authority to set *policy* for hiring and firing, not a delegation of only the final authority to hire and fire. *Id.* (collecting cases).

Furthermore, with respect to hiring decisions, "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was

7

highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Brown*, 520 U.S. at 412 (emphasis in original). "In other words, a plaintiff must connect the dots between the past conduct and the specific constitutional violation." *Wilson v. Cook Cnty.*, 742 F.3d 775, 783 (7th Cir. 2014).

## CONCLUSION

For the reasons mentioned above, the Court grants the Village's Motion to Dismiss [20]. Count I of Plaintiff's First Amended Complaint is dismissed without prejudice. Status is set for 7/14/2022 at 10:00 a.m.

It is so ordered.

Dated: June 28, 2022

_____
Charles P. Kocoras
United States District Judge